1:19mj3283

## **AFFIDAVIT**

I, Michael D. Nelson, currently assigned to the Northern Ohio Law Enforcement Task Force (hereinafter referred to as NOLETF) as a Special Agent with the Federal Bureau of Investigation (hereinafter referred to as FBI), hereinafter referred to as Affiant, being duly sworn, do depose and state that:

1. Your Affiant is seeking a criminal complaint against Jose Alphonso LOPEZ for violation of Title 21, United States Code, Section 841(a)(1).

2. As a Special Agent of the FBI, your Affiant is an investigative law enforcement officer of the United States of America within the meaning of Title 18 U.S.C. 2510(7). Your Affiant is empowered to conduct investigations and to make arrests for federal felony offenses.

3. Your Affiant has been employed by the Federal Bureau of Investigation for 7 years and has been assigned to the Cleveland Division of the FBI for approximately 2.5 years. Your Affiant was assigned to the San Antonio Division, McAllen Resident Agency prior to transferring to the Cleveland Division. During that time, your Affiant has been assigned to investigate activities of drug trafficking organizations, drug-related gang and violent crime activities, and other criminal offenses. As a Special Agent of the FBI, your Affiant has participated in narcotics/drug enforcement, and the dismantlement of mid- to upper-level drug trafficking organizations. Your Affiant has planned and executed long-term investigative operations that have led to the disruption and dismantlement of criminal enterprise organizations whose revenues centered primarily around the trafficking and distribution of illicit drugs. These investigative operations have included undercover operations and Title III intercepts of telephone communications and activities.

4. As a Special Agent in the FBI, your Affiant received basic drug training at the FBI Academy in Quantico, Virginia. Your Affiant has received field training and accrued practical

experience in advanced drug-related investigative techniques, which include, but are not limited to, surveillance, undercover operations, interview and interrogation techniques, informant recruitment and control, search warrant and case preparation, and interception and analysis of recorded conversations.  Your Affiant has been involved in numerous operations involving controlled purchases of drug evidence and subsequent arrests of defendants charged with drug-related crimes.  Your Affiant has supervised the activities of informants who have provided information concerning controlled substances and organized criminal activities, purchased controlled substances, and supervised consensual monitoring in connection with these investigations.  Your Affiant has utilized various forms of tracking technology to assist in various forms of criminal investigation.

5. Your Affiant is familiar with the terminology used by persons involved in these criminal activities, including the illicit distribution of controlled substances, the *modus operandi* of persons involved with such acts, including the knowledge that persons involved with organized criminal activity, particularly the distribution of controlled substances, frequently attempt to conceal their identities, the locations at which the illicit transactions occur and the laundering of proceeds from the illicit activity into "clean" currency.  Your Affiant knows that individuals engaged in drug trafficking maintain telephone contact with persons throughout the United States and elsewhere with whom they are involved in illegal activity, including drug suppliers, drug couriers, drug customers and others involved in the supply, transportation, distribution, sales and marketing of controlled substances.  The use of telephones is essential in maintaining timely long distance and local contacts from the leaders of a Drug Trafficking Organizations (DTOs), in an effort to conceal their identities and illegal purposes, often list their telephones in the name of aliases, false names or other persons.  Additionally, such persons often carry multiple cellular telephones and purchase

prepaid cellular telephones that do not require any proof of identification, in order to conceal their identities for illegal purposes.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## INTRODUCTION

7. The FBI and members of the Northern Ohio Law Enforcement Task Force (NOLETF) have been investigating the drug trafficking activities of JOSE A. LOPEZ, JOSE L. PERAZA, ROBERT A. MAYSONET, and others, since March, 2019. CI#1[1] identified LOPEZ, PERAZA, and MAYSONET as members of a Drug Trafficking Organization operation in Cleveland, Ohio. The investigation has also revealed, through physical and electronic surveillance that JOSE L. PERAZA and JOSE A. LOPEZ are conducting drug trafficking activity within the residence of JOSE A. LOPEZ, located at 12713 Crossburn Avenue, Cleveland, Ohio (hereinafter referred to as LOPEZ's residence).

8. Since this investigation's inception, your Affiant has received witness statements and information from Special Agents of the FBI, NOLETF officers, and local law enforcement officers indicating that the subjects of this investigation are engaged in substantial narcotics trafficking, as well as conspiracies to violate Federal laws.

---

[1] CI#1 has provided information to Law Enforcement concerning activities of multiple drug trafficking organizations in the Cleveland, area. CI#1 has conducted narcotics purchases on behalf of Law Enforcement and made consensually recorded telephone calls. CI#1 is providing information to investigators for consideration on criminal charges. CI#1 has consistently provided timely and accurate criminal intelligence, and has never provided information that was later proven to be false or misleading. For these reasons, your Affiant believes that CI#1's information is reliable.

3

9. Your Affiant is familiar with the facts and circumstances of the offenses described in this Affidavit based upon your Affiant's personal participation in the investigation of JOSE A. LOPEZ, JOSE L. PERAZA, ROBERT A. MAYSONET, and other members of this Drug Trafficking Organization (DTO), as well as through information obtained from other law enforcement agencies, witnesses, and reliable sources.

10. Except as otherwise noted, the information set forth in this Affidavit has been provided to your Affiant by FBI Agents or other law enforcement officers.  Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom your Affiant has spoken or whose report your Affiant has read and reviewed.  Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth your Affiant's observations but rather has been provided directly or indirectly by FBI Agents or other law enforcement officers who conducted such surveillance. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS); from Thompson Reuters, a law enforcement credit header database (CLEAR); from the State of Ohio or the National Crime Information Center (NCIC) computers; or by the Ohio Law Enforcement Gateway database (OHLEG) by members herein described.

## PROBABLE CAUSE

11. Your Affiant states that the Northern Ohio Law Enforcement Task Force investigators have developed a Confidential Informant (hereinafter referred to as CI#1).

12. JOSE L. PERAZA has been identified in this investigation as mid-level cocaine distributor in the Cleveland, Ohio, area, with a drug related criminal history.  The investigation

revealed that PERAZA acts as a "middle-man" drug supplier, and is believed to be being supplied cocaine by JOSE A. LOPEZ. Furthermore, CI#1 has stated to investigators that he/she has been told by PERAZA that JOSE A. LOPEZ and ROBERT A. MAYSONET are PERAZA's drug suppliers. During this investigation, your Affiant has personally participated with investigators of the Northern Ohio Law Enforcement Task Force.

13. On July 25th, 2018, JOSE LOPEZ was arrested by The Ohio State Highway Patrol (Case Number 180830410318) in Cleveland, Ohio, for OVI. During the arrest, LOPEZ was found to be concealing suspected marijuana in his "crotch" which he was able to remove and surrender to arresting officers without exposing himself. LOPEZ was also suspected of attempting to conceal suspected crack cocaine in the rear seat of the Highway Patrol cruiser. As of July 25th, 2019, felony drug charges are still pending in this case.

14. On December 6th, 2018, JOSE LOPEZ was arrested by the Cleveland Police Department (Case Number 2018-00368214) following a traffic stop. The arresting Officers concluded LOPEZ was operating a rental vehicle without a valid driver's license. While conducting a vehicle inventory, the arresting Officer located a handgun inside the vehicle. Subsequently, LOPEZ was arrested for carrying a Concealed Weapon.

15. Cleveland Police Detectives were assigned to complete a follow-up investigation regarding the arrest mentioned in paragraph 17. During the follow-up, Detectives spoke with LOPEZ, wherein, LOPEZ stated the handgun located inside the vehicle he was driving during his arrest, belonged to his girlfriend. LOPEZ identified his girlfriend as, Isaura Gonzalez. Detectives made contact with Isaura Gonzalez, wherein, Gonzalez corroborated LOPEZ's statement to Detectives. Gonzalez further stated, the vehicle LOPEZ was operating during the arrest, was rented by her due to her being involved in a motor vehicle accident with her personal vehicle. During

further investigation, Gonzalez was found to be a licensed Carrying Concealed Weapon holder. With this information provided, the Assistant Prosecutor with the City of Cleveland, concluded there was insufficient evidence to file formal charges against LOPEZ.

16. On March 13th, 2019, JOSE LOPEZ contacted the Cleveland Police Department to report his firearm was stolen from the garage located at his listed BMV address, 3342 W. 86th Street, Cleveland, Ohio (reference Case Number 2019-00069262). The Cleveland Police Department responded to the address, and met with LOPEZ, wherein, he provided a statement reference his stolen firearm. In LOPEZ's statement, he provided a phone number of (330) 441-7640, as his telephone number.

17. On March 21st, 2019, NOLETF investigators met with CI#1 for the purpose of purchasing cocaine from JOSE PERAZA. Prior to the controlled purchase, CI#1 contacted PERAZA on telephone number (216) 312-5120 (a phone number known to be used and possessed by PERAZA) to facilitate the narcotics purchase. Phone toll analysis showed that PERAZA made an outgoing call to (330) 441-7640 (a phone number known to be used and possessed by JOSE LOPEZ) after being in contact with CI#1. In addition, investigators established surveillance in the area of MAYSONET's residence, 3116 W.84th Street, Cleveland, Ohio, awaiting the arrival of PERAZA. Shortly thereafter, investigators on surveillance in the area of MAYSONET's residence, observed a silver Pontiac G-6 with Ohio Registration HMX4615, arrive at 3116 W.84th Street, Cleveland, Ohio. JOSE L. PERAZA is the registered owner of the aforementioned vehicle.

18. Under the watch of investigators, CI#1 responded to a mutually agreed upon location to meet with PERAZA. Shortly after CI#1 arrived at the location, investigators observed PERAZA depart MAYSONET's residence, 3116 W.84th Street, Cleveland, Ohio. Investigators attempted to maintain constant surveillance of PERAZA, but were unsuccessful. After surveillance was lost with

PERAZA, investigators reacquired surveillance of PERAZA and his vehicle, at the time when PERAZA arrived at the mutually agreed upon location with CI#1 to conduct a drug transaction (surveillance was lost of PERAZA for approximately eleven (11) minutes). At this time, PERAZA conducted a drug transaction with CI#1. After the drug transaction was complete, surveillance units observed PERAZA depart the area, and followed him directly to MAYSONET's residence, 3116 W.84th Street, Cleveland, Ohio, wherein, MAYSONET was observed entering the passenger side of PERAZA's vehicle. Surveillance units observed PERAZA and MAYSONET depart the area, and mobile surveillance was initiated. Shortly thereafter, investigators observed PERAZA and MAYSONET parked on a side street in the City of Cleveland. At this time, an unknown male who was walking on foot, approached PERAZA's vehicle. Investigators then observed PERAZA stick his hand out the driver's window, and make hand-to-hand contact with the unknown male. The unknown male was observed meeting with PERAZA for only a few seconds, before departing. The unknown male was then observed entering a residence in close proximity to where he just met PERAZA in the street. Shortly thereafter, surveillance was terminated for fear of compromising an on-going investigation. It is believed by investigators, that a hand-to-hand drug transaction was observed with the unknown male and PERAZA.

  19. CI#1 departed the area where the controlled drug purchase took place with PERAZA, and respond to a pre-determined location for a debriefing. During the debriefing, investigators relinquished the suspected cocaine from CI#1, and maintained possession of it. Investigators then removed the electronic surveillance equipment that CI#1 was fitted with prior to the controlled drug purchase. The recorded electronic surveillance was able to positively identify PERAZA as the person who sold the suspected cocaine to CI#1 in exchange for NOLETF prerecorded confidential funds. Investigators maintained constant audio and/or visual surveillance of CI#1 during this

7

controlled drug purchase. The suspected cocaine was later submitted to the Cuyahoga County Forensic Science Laboratory for analysis. The lab report confirmed it was cocaine hydrochloride, a schedule II-controlled substance.

20. On April 17th, 2019, NOLETF investigators met with CI#1 for the purpose of purchasing cocaine from JOSE PERAZA. Prior to the controlled purchase, CI#1 contacted PERAZA on telephone number (216) 312-5120 (a phone number known to be used and possessed by PERAZA) to facilitate the narcotics purchase. Phone toll analysis showed that PERAZA made an outgoing call to (330) 441-7640 (a phone number known to be used and possessed by JOSE LOPEZ) prior to, and after the drug transaction. In addition, investigators established surveillance in the area of MAYSONET's residence, 3116 W.84th Street, Cleveland, Ohio. Additionally, investigators also established surveillance in the area of JOSE PERAZA's residence, 3913 E.42nd Street, Newburgh Heights, Ohio.

21. Shortly after the call was placed placed by CI#1 to PERAZA, investigators on surveillance in the area of MAYSONET's residence, 3116 W.84th Street, Cleveland, Ohio, observed a white Chevrolet Traverse with Ohio Registration GRA2472 arrive at the residence. ROBERT MAYSONET is listed as an additional registered owner of this vehicle. Investigators then observed MAYSONET exit the vehicle, and observed him talking on his cellular telephone.

22. Investigators in the area of PERAZA's residence, then observed PERAZA's vehicle depart his residence, 3913 E.42nd Street, Newburgh Heights, Ohio. At this time, mobile surveillance was initiated, wherein, PERAZA's vehicle was followed to the area of Crossburn Avenue, Cleveland, Ohio. Investigators were unable to maintained constant surveillance of PERAZA's vehicle. Shortly after surveillance of PERAZA's vehicle was lost, investigators observed the vehicle backing out of a residential driveway in the 12700 block of Crossburn Avenue, Cleveland,

Ohio, wherein, PERAZA was later identified as the driver. Investigators maintained constant surveillance of PERAZA, wherein, he was followed from the 12700 block of Crossburn Avenue, Cleveland, Ohio, directly to a mutually agreed upon location to meet with CI#1.

23. Under the watch of investigators, CI#1 responded to the mutually agreed upon location to meet with PERAZA. Shortly after CI#1 arrived at the location, investigators observed PERAZA arrive, wherein, PERAZA conducted a drug transaction with CI#1. After the drug transaction was complete, surveillance units observed PERAZA depart the area, and mobile surveillance was initiated. Surveillance units then followed PERAZA to different residential locations throughout the City of Cleveland, Ohio. One of the residences PERAZA was followed to, was 3342 W. 86th Street, Cleveland, Ohio (JOSE LOPEZ's listed BMV address), where he was observed entering the residence. PERAZA was then followed from this location, to an area in close proximity to MAYSONET's residence, 3116 W.84th Street, Cleveland, Ohio, wherein, PERAZA was observed exiting his vehicle, and entering the passenger side of MAYSONET's vehicle. Investigators observed PERAZA enter MAYSONET's vehicle briefly, then returned to his vehicle, and depart the area. Investigators initiated mobile surveillance of PERAZA. Shortly thereafter, surveillance was terminated for fear of compromising an on-going investigation.

24. CI#1 departed the area where the controlled drug purchase took place with PERAZA, and respond to a pre-determined location for a debriefing. During the debriefing, investigators relinquished the suspected cocaine from CI#1, and maintained possession of it. Investigators then removed the electronic surveillance equipment that CI#1 was fitted prior to the controlled drug purchase. The recorded electronic surveillance can positively identify PERAZA as the person who sold the suspected cocaine to CI#1 in exchange for NOLETF prerecorded confidential funds. Investigators maintained constant audio and/or visual surveillance of CI#1 during this controlled

drug purchase. Investigators believe the cocaine purchased during this controlled drug purchase was obtained by PERAZA from the residence located in the area of the 12700 block of Crossburn Avenue, Cleveland, Ohio. The suspected cocaine was later submitted to the Cuyahoga County Forensic Science Laboratory for analysis. The lab report confirmed it was cocaine hydrochloride, a schedule II-controlled substance.

25. On August 7th, 2019, Magistrate Judge Jonathan D. Greenberg, in the United States District Court, for the Northern District of Ohio, Eastern Division, signed an Order authorizing the installation of a Pen Register Device and/or Trap and Trace Device on cellular telephone number (216) 259-2572[2] with the service provided by Metro PCS.

26. On August 8th, 2019, NOLETF investigators met with CI#1 for the purpose of purchasing cocaine from JOSE PERAZA. Prior to the controlled purchase, CS#1 made a consensually recorded phone call to PERAZA, wherein, CI#1 spoke with PERAZA and requested to purchase cocaine. Immediately after CI#1 disconnected the call, Pen Register activity showed PERAZA make an outgoing call to phone number (330) 441-7640 (a phone number known to be used and possessed by JOSE LOPEZ).

27. Investigators established surveillance in the area of the 12700 block of Crossburn Avenue, Cleveland, Ohio, prior to having CI#1 contact PERAZA. Additionally, investigators established surveillance in the area of JOSE PERAZA's residence, 3913 E.42nd Street, Newburgh Heights, Ohio.

28. Shortly after the call was placed by CI#1 to PERAZA, investigators on surveillance in the area of PERAZA's residence, then observed PERAZA exit his residence, and enter his

---

[2] Following the controlled drug purchase mentioned in paragraph 23, investigators received information from CI#1, that JOSE PERAZA began utilizing this phone number to conduct drug trafficking activity.

vehicle. At this time, mobile surveillance was initiated, wherein, PERAZA was followed directly to LOPEZ's residence. Investigators observed PERAZA exit his vehicle and walk towards the side entrance door to LOPEZ's residence. It is believed PERAZA entered the residence. Shortly thereafter, PERAZA was observed walking to his vehicle, with JOSE A. LOPEZ, from the same direction of the side entrance/exit door of LOPEZ's residence. PERAZA and LOPEZ entered PERAZA's vehicle, and departed the area. At this time, mobile surveillance of PERAZA and LOPEZ was initiated. Shortly after departing the residence, investigators followed PERAZA, and LOPEZ, one block, wherein, LOPEZ, was observed exiting PERAZA's vehicle and entering the passenger side of an additional vehicle. PERAZA then departed the area and was followed directly to a mutually agreed upon location to meet with CI#1.

29. Under the watch of investigators, CI#1 responded to the mutually agreed upon location to meet with PERAZA. Shortly after CI#1 arrived at the location, investigators observed PERAZA arrive, wherein, PERAZA conducted a drug transaction with CI#1. After the drug transaction was complete, surveillance units observed PERAZA depart the area, and mobile surveillance was initiated. Surveillance units then followed PERAZA directly back to LOPEZ's residence. PERAZA was observed exiting his vehicle and walking towards the side entrance of the residence. It is believed PERAZA then entered the residence. Shortly thereafter, investigators terminated surveillance for fear of compromising an on-going investigation.

30. CI#1 departed the area where the controlled drug purchase took place with PERAZA, and respond to a pre-determined location for a debriefing. During the debriefing, investigators relinquished the suspected cocaine from CI#1, and maintained possession of it. Investigators then removed the electronic surveillance equipment that CI #1 was fitted with prior to the controlled drug purchase. Investigators maintained constant audio and/or visual surveillance of CI#1 during this

11

controlled drug purchase. Investigators believe the cocaine purchased during this controlled drug purchase was obtained by PERAZA, from LOPEZ, at LOPEZ's residence. Investigators further believe that PERAZA responded back to LOPEZ's residence, after the drug transaction was complete to provide LOPEZ with the NOLETF pre-recorded confidential funds utilized during the controlled drug purchase. The suspected cocaine was later submitted to the Cuyahoga County Forensic Science Laboratory for analysis. The lab report confirmed it was cocaine hydrochloride, a schedule II-controlled substance.

31. On September 25th, 2019, Magistrate Judge David A. Ruiz, in the United States District Court, for the Northern District of Ohio, Eastern Division, signed a Warrant and an Order to ascertain the physical location of the cellular telephone number (330) 441-7640 (a phone number known to be possessed and used by, JOSE LOPEZ), with the service provided by Sprint, including but not limited to E-911 Phase II data or other precise location information.

32. Investigators found that a majority of the late evening and early morning hours, in which persons would normally be asleep, from September 27th, 2019 through October 31st, 2019, telephone number (330) 441-7640, was found to be in the general proximity of LOPEZ's residence.

33. On October 31st, 2019, investigators collected curbside trash from LOPEZ's residence. Several items were recovered from the trash collection that were consistent of drug trafficking materials, which included; multiple clear plastic sandwich-sized baggies. Some of the baggies had the corners torn off, and some were tied into a knot to create a "pouch." A few bags contained small amounts of a substance consistent in color, appearance, and odor with raw marijuana. Numerous pieces of mail addressed to Isaura Gonzalez, who is known to investigators as JOSE LOPEZ's girlfriend, were also recovered.

34. Your Affiant states that in his training and experience, individuals who traffic in drugs will very often use clear, plastic, sandwich-sized baggies in which to package and sell cocaine and marijuana. The drugs are usually put into the lower corner of the baggies, and the other corner is usually torn off to create a "pouch". Clear plastic baggies are used because they are inexpensive, readily obtainable at a number of retail establishments, and allow the amount of drugs inside to be observed easily. Sandwich-sized baggies are used since they are a convenient size for the amount of drugs which is sold for one-time personal use. In your Affiant's training and experience, when a number of clear plastic baggies with the corners torn off are observed by the law enforcement, such as in this instance, it is a very good indication of drug trafficking.

35. On November 7, 2019, Magistrate Judge David A. Ruiz, in the United States District Court, for the Northern District of Ohio, Eastern Division, signed a Search Warrant for 12713 Crossburn Ave, Cleveland, Ohio, the residence of Jose A. LOPEZ. The search warrant was executed at approximately 8:00 a.m. by your Affiant and members of the NOLETF. LOPEZ was present at the residence for the execution of the warrant. Investigators seized approximately 3 kilograms of a white powdery substance (field tested positive for cocaine, numerous "kilo caskets" [3], scales and packaging materials consistent with street level narcotics trafficking.

## **CONCLUSION**

36. Based on the foregoing facts and circumstances, your Affiant believes there is probable cause to believe that JOSE A. LOPEZ was in violation of Title 21, United States Code, Section 841(a)(1), possession with intent to distribute cocaine.

_____
Michael D. Nelson
Special Agent
Federal Bureau of Investigation

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)



Thomas M. Parker
United States Magistrate Judge
**1:50 PM, Nov 8, 2019**

---

[3] "kilo caskets" refer to packaging materials consistent with the transportation and storage of kilogram amounts of narcotics.